IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Appellee, ) | |
| ) | |
| v. ) | |
| ) | Criminal Action No. 1:23-cr-52 (RDA) |
| LAUREN GREENE, ) | |
| ) | |
| Defendant/Appellant. ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant-Appellant Lauren Greene's ("Defendant") Appeal of Magistrate Judge Decision ("Appeal"). Dkt. 2. This matter has been fully briefed and is now ripe for disposition. Having considered the Appeal (Dkt. 2) together with Defendant's Appellate Brief (Dkt. 6), the Government's Opposition (Dkt. 7), Defendant's Reply (Dkt. 8), Defendant's Supplemental Memorandum (Dkt. 15), and the Government's Response (Dkt. 16), this Court REVERSES and VACATES Defendant's conviction for the following reasons.

I. BACKGROUND

A. Factual Background

Analysis of this appeal properly begins with a statement of the pertinent record facts, which consists of testimony from two witnesses and the admission of two exhibits.

On June 29, 2022, at approximately 3:00 a.m., Central Intelligence Agency ("CIA" or the "Agency") Police Officer Timothy Violette was patrolling CIA Headquarters when he saw Defendant standing on a median approximately 20 to 30 feet within the CIA property line. Dkt. 2-1 at 91. The CIA Headquarters is enclosed by a fence, but the fence does not reach the edge of the CIA property, and the property boundary is unmarked. *Id.* at 96-97. Defendant was standing

on the unfenced portion of the CIA property, approximately eight to ten feet away from a crosswalk located closer toward the outer edge of the unenclosed portion of the property. *Id.* at 94-95. The crosswalk is regularly used by pedestrians to go to the CIA Headquarters or elsewhere. *Id.* at 95. There was a sign on the property that read: "WARNING RESTRICTED U.S. GOVERNMENT INSTALLATION EMPLOYEES AND OFFICIAL VISITORS ONLY. IT IS UNLAWFUL TO ENTER OR ATTEMPT TO ENTER THIS INSTALLATION WITHOUT PROPER AUTHORIZATION. 32 C.F.R. 1903." *Id.* at 125 (capitalization in original). Defendant claims she would have had to look further into the property in order to see the warning sign, but the Government contends that Defendant had a clear view of the warning sign. Dkts. 6 at 3; 7 at 3. The sign did not have lighting around it, but was backlit from the traffic lights. Dkt. 2-1 at 91. It is undisputed that Defendant did not go past the CIA Headquarters fence or the warning sign. Dkt. 2-1 at 96. The unmarked property line would have been approximately 20 or 30 feet behind Defendant. *Id.*

Officer Violette approached Defendant after watching her continue to stand on CIA property, and Defendant indicated that she knew she should not be on CIA property. *Id.* at 98. Defendant was arrested and charged on June 29, 2022, with trespass under 32 C.F.R. § 1903.7. Dkt. 7 at 3.

Prior to the June 29, 2022 incident, Defendant had been caught trespassing on CIA property on at least seven different occasions. During one prior incident, Defendant was caught trying to scale the fence to gain access to the CIA Headquarters. Dkt. 2-1 at 93. On each of those past occasions, Defendant had gone beyond the warning sign. *Id.* at 100. Defendant testified that the CIA Security Protective Service told her during those prior interactions that "there was a line of demarcation" on the CIA property which she could not pass and that "the line of demarcation was past the warning sign, the No Trespass sign." *Id.* at 111-12. After the incident when Defendant

was caught attempting to scale the CIA Headquarters fence, she was arrested. *Id.* at 93. Defendant appeared in court on June 24, 2022—5 days prior to the June 29, 2022, incident—and signed a statement that read: "I agree not to return to the CIA HQ unless I have expressed [sic] written authorization to return." *Id.* at 126. On the day relevant to this matter, Defendant did not go past that warning sign. *Id.* at 112.

### B. Procedural Background

On June 29, 2022, the Government filed its Criminal Complaint and a supporting Affidavit as to Defendant. *USA v. Greene*, No. 1:22-mj-165 (E.D. Va.), Dkts. 1; 2. On June 30, 2022, Defendant was arrested and had her initial appearance before U.S. Magistrate Judge John F. Anderson. *Id.*, Dkt. 6. Thereafter, U.S. Magistrate Judge Ivan D. Davis issued a Temporary Detention order. *Id.*, Dkts. 6; 8. The bench trial commenced on October 27, 2022, before Magistrate Judge Davis. *Id.*, Dkt. 15. At the conclusion of the Government's evidence, Defendant moved for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. *Id.* Magistrate Judge Davis provisionally denied the motion, with leave for the parties to fully brief the issue after the conclusion of the evidence and stayed the trial until November 10, 2022. *Id.*

On November 3, 2022, the Government filed an Opposition to Defendant's Motion for Judgement of Acquittal. *Id.*, Dkt. 17. On November 4, 2022, Defendant filed a Reply in support of her Motion for Judgment of Acquittal. *Id.*, Dkt. 18.

On November 10, 2022, Defendant failed to appear for the second day of the bench trial due to logistical issues and the bench trial was reset for November 29, 2022. *Id.*, Dkt. 19. On November 23, 2022, Defendant filed a Motion to Continue Trial Date and the Court granted Defendant's Motion to Continue. *Id.*, Dkts. 22; 25. On January 10, 2023, Defendant again failed to appear and an arrest warrant was issued for Defendant. *Id.*, Dkts. 26; 27. On January 20, 2023, the bench trial was continued until January 24, 2023. *Id.*, Dkt. 34. On January 24, 2023, Defendant

failed to appear for the third time. *Id.*, Dkt. 35. On March 2, 2023, Defendant was arrested, a Temporary Detention Order was issued, and a probation revocation/detention hearing was set for March 6, 2023. *Id.*, Dkt. Nos. 38; 39.

The bench trial commenced on March 6, 2023. *Id.*, Dkt. 41. Magistrate Judge Davis denied Defendant's Motion for Acquittal and found Defendant guilty of Trespass on an Agency Installation in violation of 32 C.F.R. § 1903.7(a), a Class C misdemeanor. *Id.* On March 7, 2023, Magistrate Judge Davis entered a Judgment Order as to Defendant. *Id.*, 43.

On March 9, 2023, Defendant filed an Appeal of Magistrate Judge Decision. *USA v. Greene*, No. 1:23-cr-52 (RDA), Dkt. 1. On April 19, 2023, Defendant filed her Appellate Brief. Dkt. 6. The Government filed its Opposition Brief on May 3, 2023. Dkt. 7. Defendant filed her Reply Brief on May 10, 2023. Dkt. 8.

After briefing on the appeal was completed, Defendant moved for a change of attorney. Dkt. 9. The Court held a hearing on the motion, and the motion was denied at the hearing and in a written order. Dkts. 10, 11.[1]

## II. STANDARD OF REVIEW

"An appellate review conducted by a district court after a bench trial before a magistrate judge is not a trial de novo; rather, the district court utilizes the same standards of review applied

---

[1] Defendant has continued to file unnecessary and frivolous filings, mostly unrelated to the appeal at hand. *See* Dkts. 12; 13; 14; 17; 18; 19; 20; and 21. In part, Defendant appears to suggest that this District Judge should recuse, Defendant has not comported with the requirements of 28 U.S.C. § 144 or 28 U.S.C. § 455. *See, e.g.*, Dkt. 18. Nor has Defendant suggested a basis upon which this District Judge's impartiality could reasonably be questioned. Thus, to the extent Defendant's letter motions suggest that this District Judge should recuse himself, that motion is denied. *In re Drexel Burnham Lambert, Inc.*, 861 F.2d 1307, 1312 (2d Cir. 1988) (holding that "a judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is"); *United States v. Glick*, 946 F.2d 335, 337 (4th Cir. 1991). Other filings from Defendant seek civil and other remedies that are not related to the matter before the Court in *this* case and are therefore properly denied. *See United States v. Holland*, 214 F.3d 523, 526 (4th Cir. 2000) ("Ancillary motions in a criminal case are not necessarily criminal.").

by a court of appeals in assessing a district court conviction." *United States v. Bursey*, 416 F.3d 301, 305 (4th Cir. 2005). "Findings of fact made by the trial court are reviewed for clear error, and issues of law (such as the interpretation of statutes and regulations) are reviewed de novo." *Id.* at 306.

### III. ANALYSIS

Here, the parties do not debate the factual record and, importantly, do not dispute that Defendant was not in the fenced in portion of CIA Headquarters and had not passed the No Trespassing sign. Rather, the parties' dispute centers on the meaning of the agency regulations under which Defendant was convicted. The Court reviews the meaning of those regulations *de novo*.

Defendant was charged and convicted under 32 C.F.R. § 1903.7(a). That regulation reads as follows:

> Entering, or remaining on any Agency installation without proper authorization is prohibited. Failure to obey an order to leave given under this section by an authorized person, or reentry or attempted reentry onto the Agency installation after being ordered to leave or after being instructed not to reenter by an authorized person under this section is also prohibited.

32 C.F.R. § 1903.7(a). The term "Agency installation" is defined in an accompanying regulation. *Id.* § 1903.1. At the time of Defendant's arrest and trial, that regulation read:

> Agency installation. For the purposes of this part, the term Agency installation means the property within the Agency Headquarters Compound and the property controlled and occupied by the Federal Highway Administration located immediately adjacent to such Compound, and property within any other Agency installation and protected property (i.e., property owned, leased, or otherwise controlled by the Central Intelligence Agency).

*Id.* § 1903.1 (April 6, 2023 version).[2]

---

[2] The regulation has since been updated and currently reads as follows:

5

Read together, the regulatory scheme prohibits "[e]ntering, or remaining on," *id.* § 1903.7(a), three types of federal land: (1) "property within the [CIA] Compound," (2) "property controlled and occupied by the Federal Highway Administration located immediately adjacent to such Compound," and (3) "property within any other [CIA] installation and protected property," *id.* § 1903.1. Only the first type of federal land is at issue here.[3] Thus, this court must evaluate whether Defendant entered or remained on the CIA compound.

On appeal, Defendant makes two principal arguments that she did not trespass on the CIA compound. She contends that both the plain meaning of the term "compound" and the rule of lenity counsel that her conviction ought to be vacated. This Court agrees and therefore vacates Defendant's trespass conviction.

"The starting point for any issue of statutory interpretation . . . is the language of the statute itself." *United States v. Bly*, 510 F. 3d 453, 460 (4th Cir. 2007). "In that regard, we must first determine whether the language at issue has a plain and unambiguous meaning with regard to the

---

> Agency installation. For the purposes of this part, the term Agency installation means *property owned, leased, or controlled by the Central Intelligence Agency*, property controlled and occupied by the Federal Highway Administration located immediately adjacent to the CIA Headquarters Compound, and property owned, leased, or controlled by the Office of the Director of National Intelligence.

32 C.F.R. § 1903.1 (emphasis added).

[3] Defendant argues, and the Government does not contest, that only the first type of federal land, "property within the [CIA] Compound" is at issue here. *See* Dkt. 6 at 9-15 (Defendant asserting she did not trespass on the CIA Headquarters Compound); Dkt. 7 at 4 (Government asserting that "the defendant trespassed within the CIA Headquarters *Compound*") (emphasis added). Indeed, the Government focused exclusively on the meaning of the term "Compound" and attempted to use the other types of federal land to create an expansive definition of that term, but did not argue that Defendant was on a type of land other than the CIA Compound. Dkt. 7 at 8-9 arguing that the term Compound "includes property outside of a fence or a wall"). Importantly, nothing in the record reflects that the Government asserted that Defendant was arrested or in violation of the statute for being found on property controlled and occupied by the Federal Highway Administration located immediately adjacent to such Compound or property within any other installation and protected property. *See* Dkt. 2-1 at 1-180.

particular dispute . . . and our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Id.* (omission in original) (quoting *United States v. Hayes*, 482 F.3d 749, 752 (4th Cir.2007), *rev'd on other grounds*, 555 U.S. 415 (2009)) (internal quotation marks omitted). In undertaking this inquiry, words that are not defined in the relevant statutory provisions are typically "interpreted as taking their ordinary, contemporary, common meaning." *United States v. Lehman*, 225 F.3d 426, 428 (4th Cir. 2000) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)) (internal quotation marks omitted). "The Court customarily turns to dictionaries for help in determining whether a word in a statute has plain or common meaning." *Johnson v. Zimmer*, 686 F.3d 224, 232 (4th Cir. 2012) (internal quotation marks and brackets omitted).

Relevant here, dictionaries define the term compound as "a fenced or walled-in area containing a group of buildings and especially residences," Merriam Webster English Dictionary, https://www.merriam-webster.com/dictionary/compound (last visited Jan. 21, 2025), or "a large fenced-in space in a prison, concentration camp, or the like," Oxford English Dictionary, https://www.oed.com/search/dictionary/?scope=Entries&q=compound (last visited Jan. 21, 2025).[4] Applying those definitions here, Defendant did not violate the regulation because she did not cross any fence and was undisputedly not beyond the "No Trespassing" sign. Moreover, the area where she was standing was close to the portion of CIA property that is accessible to the public. Dkt. 6 at 3; Dkt. 7 at 4; Dkt. 2-1 at 91-97 (noting that the CIA Headquarters is enclosed by a fence, but the fence does not reach the edge of the CIA property, and Defendant was standing on the unfenced portion of the CIA property). Accordingly, Defendant was not present on the "Agency Headquarters Compound," and therefore, was not entering or remaining on an "Agency

---

[4] The Court notes that the Fourth Circuit often relies on the Oxford English Dictionary. *See, e.g.*, *United States v. Ward*, 972 F.3d 364, 370 (4th Cir. 2020).

7

installation." In sum, under the plain language of the statute, Defendant was not in violation of 32 C.F.R. § 1903.7(a).

In an attempt to avoid this result, the Government relies on the Supreme Court's decision in *United States v. Apel*, 571 U.S. 359 (2014). In *Apel*, the Supreme Court addressed a trespass on a "military installation," where military installation was not further defined. *Id.* at 359-73. There, the defendant was also on a public accessway and outside the fenced area of the military base. *Id*. The Supreme Court held that the definition of "military installation" included the highways running through the base. *Id.* at 373.

Here, by contrast, "Agency installation" is further defined in the regulation to include three types of federal land. 32 C.F.R. § 1903.1 (chapter 1903: Conduct on Agency Installations, section titled "Definitions"); 32 C.F.R. § 1903.1 (chapter 1903: Conduct on Agency Installations, section titled "Trespassing"). As with any statutory construction, the Court must assume that the use of the word "Compound" was intentional and apply the ordinary meaning of that term. As Courts of Appeals instruct, when interpreting statutes or regulations courts are "not allowed to add or subtract words from a statute; we cannot rewrite it." *Friends of Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1224 (11th Cir. 2009). That is for the legislature or Agency to do. And, here, the Agency did rewrite the regulation to include additional language to indicate that Agency installation "means *property owned, leased, or controlled by the Central Intelligence Agency*." 32 C.F.R. § 1903.1 (emphasis added). Indeed, that the regulation has now been amended to include more specific language suggests to the Court that the Agency recognized that the plain language of the prior regulation (under which Defendant was convicted) did *not* include the property on which Defendant was standing at the time of her arrest. *See, e.g.*, *Coleman v. Glynn*, 983 F.2d 737, 741 (6th Cir. 1993) (Merritt, C.J., concurring) (noting that "Congress' later amendment . . . suggests that its voice was not clear prior to that time"); *j2 Global Commc'ns, Inc. v. Protus IP*

8

*Solutions*, 2008 WL 11335051, at *6 (C.D. Cal. Jan. 14, 2008) (noting, "[t]hat Congress amended the statute . . . suggests that Congress did not consider the statute applicable . . . prior to those amendments"); *cf. United States v. Stewart*, 595 F.3d 197, 202 (4th Cir. 2010) (recognizing the principle of statutory construction of *expresio unius est exclusion alterius*, meaning that the inclusion of one excludes others).

In this prosecution, the Government specifically relies on the "Agency Compound" portion of the definition of "Agency Installation."  Thus, as discussed *supra*, the Court should rely on the plain meaning of the more specific definition of the word "Compound," which is defined as a fenced-in area.  Moreover, it would be inappropriate for the Court to look to the definition of "military installation" as determined in *Apel* where "military installation" was not specifically defined to include a "Compound."  To do so would remove the need to have "Agency Compound" as one of the subparts of the definition of "Agency Installation" and would rewrite the regulation.  That the Agency subsequently rewrote the regulation to specifically include the property on which Defendant stood further indicates that such property was not originally included the definition of "Agency Compound" or "Agency Installation" so as to support a trespass conviction.

Defendant draws further support for the vacation of her conviction from the application of the rule of lenity to the regulation at issue here.  The rule of lenity is, of course, another rule of statutory construction that influences the interpretation of statutes and regulations.  *See United States v. George*, 946 F.3d 643, 645 (4th Cir. 2020) (recognizing the rule of lenity as a tool of statutory construction).  Under the rule of lenity, when there is an ambiguity between competing interpretations of a criminal statute and either of two readings are plausible, the law requires the Court to adopt the interpretation that renders the conduct non-criminal.  *See Pasquantino v. United States*, 544 U.S. 349, 383 (2005) ("[W]hen confronted with two rational readings of a criminal statute, one harsher than the other, [courts] are to choose the harsher only when Congress has

9

spoken in clear and definite language.") (internal quotation marks and citations omitted). Here, Defendant's interpretation is certainly rational and is supported by: (i) the dictionary definition of the word compound; (ii) the Agency's subsequent amendment to the regulation; and (iii) Defendant's undisputed testimony that she was told that the line of demarcation was the "No Trespassing" sign.

In sum, the plain language of the statute and other principles of statutory construction all support Defendant's interpretation of the prior version of 32 C.F.R. § 1903.1 under which Defendant was convicted. In a final attempt to preserve Defendant's conviction, the Government turns not to principles of statutory construction but to the alleged absurd results and "parade of horribles" which could result from Defendant's interpretation of the regulation. Namely, the government posits that a ruling in Defendant's favor would result in the CIA having no legal ability to maintain a perimeter within its property line (for property outside its fence line). Dkt. 7 at 10. But "[t]his 'parade of horribles' argument cannot override the statute's text." *Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*, 602 U.S. 268, 270 (2024). The concern expressed by the government is not lost on the court. The persistent actions of the Defendant are troubling. But this concern cannot dictate the result reached herein. This court's disposition is reached on a formulaic assessment.

Moreover, the Government's concern no longer exists as the regulation under which Defendant was convicted has since been updated. *See supra*, n.2. Under the current version of the regulation, all property within the CIA *property* line, not simply the compound or fence line, is protected. 32 C.F.R. § 1903.1 ("[T]he term Agency installation means *property owned, leased, or controlled by the Central Intelligence Agency* . . . .") (emphasis added). In other words, under the current version of the regulation, Defendant's conviction would survive. One might think it is not insignificant, that the Agency felt the need to amend the regulation supports Defendant's

interpretation and suggests that the version of the regulation under which Defendant was convicted would not provide the basis for a conviction on these facts.[5] Thus, the Government's arguments fail to persuade, and the Court will vacate Defendant's conviction.[6]

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's conviction is REVERSED AND VACATED; and it is

FURTHER ORDERED that, to the extent Defendant seeks this District Judge's recusal, the Motion (Dkt. 18) is DENIED; and it is

FURTHER ORDERED that Defendant's remaining motions (Dkts. 12, 13, 14, 17, 18, 19, 20, 21) relate to civil or other matters not properly before the Court in this case and are therefore DENIED without prejudice.

It is SO ORDERED.

Alexandria, Virginia
January 27, 2025

/s/
Rossie D. Alston, Jr.
United States District Judge

---

[5] Of course, at the time that Magistrate Judge Davis originally ruled in this case, he did not have the benefit of the knowledge of the Agency's amendment to the applicable regulation.

[6] Because this Court finds that the plain language of the statute supports vacating Defendant's conviction, the Court need not address Defendant's tertiary arguments. Dkt. 6 at 8-9.